UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHANISE A. HARRIS, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 14-CV-0751-CVE-PJC |
| ) | |
| MEGAN J. BRENNAN, ) | |
| Postmaster General, United States ) | |
| Postal Service, ) | |
| ) | |
| **Defendant.** ) | |

**OPINION AND ORDER**

Now before the Court is the Motion of Defendant [Brennan] for Summary Judgment and to Dismiss and Brief in Support (Dkt. # 15) and plaintiff's motion to complete discovery (Dkt. # 23). Defendant Megan J. Brennan, Postmaster General of the United States Postal Service (USPS),[1] argues that plaintiff failed to timely file suit after receiving notice of a Final Agency Decision (FAD) dismissing her claims of workplace discrimination and that a second charge of discrimination was not timely filed with the USPS.[2] Plaintiff responds that there are genuine disputes as to material facts concerning the application of equitable tolling, and that the issue of equitable tolling should be submitted to a jury.

---

[1] Patrick R. Donahoe was the named defendant when the case was filed, but Brennan has since been named Postmaster General of the USPS and defendant has filed a notice of name correction (Dkt. # 18).

[2] Plaintiff has withdrawn any claims based on the second charge of discrimination and those claims will not be discussed in this Opinion and Order. Dkt. # 22, at 25.

**I.**

In August 2011, USPS hired Shanise A. Harris as a postal support employee (PSE) mail processing clerk, and Harris was assigned to the Tulsa Processing and Distribution Center. Dkt. # 15-1. Harris was hired on a temporary basis and her limited term of employment was from August 13, 2011 to August 6, 2012. Id. A PSE is hired for a term not to exceed 360 days and there must be a five day break in employment before a PSE is reappointed. Dkt. # 15-2, at 2. The collective bargaining agreement (CBA) negotiated between the USPS and the American Postal Workers Union applies to PSEs, and PSEs have access to the grievance procedure in some instances. Dkt. # 15-2, at 12. However, "the separation of PSEs upon completion of their 360-day term and the decision to not reappoint PSEs to a new term are not grievable," except that a PSE "separated for lack of work" may file a grievance if the PSE alleges that the separation is pretextual. Id. at 12-13

Harris' supervisor during her term of employment was David Downs. Dkt. # 22-2, at 1. USPS chose not to reappoint Harris after her employment ended on August 6, 2012, and she received a letter stating that the separation was a "non-disciplinary administrative action due to the expiration of [her] appointment." Dkt. # 15-4. On August 22, 2012, Harris contacted an equal employment opportunity (EEO) counselor and participated in pre-complaint counseling. Dkt. # 15-5. Harris alleged that she was discriminated against on the basis of her gender and race, and she claimed that she was treated less favorably than other employees due to her pregnancy and the need to take care of child. Id. at 1, 4. During an investigation into plaintiff's claims, plaintiff's former supervisor, Downs, stated that Harris was not reappointed because "her job performance was lacking and that it was also somewhat attendance related." Dkt. # 15-6, at 19. The pre-complaint investigation concluded without a finding of discrimination, and the USPS EEO specialist, Julie

2

Johnson, advised Harris that she could file a formal charge of discrimination or take no further action. Id. at 5.

Harris filed a formal complaint on October 3, 2012, and she identified six specific bases for her claims of workplace discrimination:

1. [She was] placed lower on the hiring register than others with lower scores which affected [her] seniority;

2. From August 30, 2011 through August 6, 2012 [she] were scheduled less [sic] hours and given less desirable non-scheduled days as compared to other PSEs;

3. From August 30, 2011 through August 6, 2012 [she wasn't] provided adequate training;

4. From August 30, 2011 through August 6, 2012 [she wasn't] made aware of available opportunities to train as a supervisor;

5. On August 6, 2012 [she was] separated from the postal service; and

6. On August 10, 2012 management attempted to circumvent [her] access to the grievance procedure.

Dkt. # 2-1, at 6. The USPS accepted issues one through five for further investigation, but it rejected the sixth issue on the ground that Harris was seeking to collaterally enforce her rights under the grievance arbitration procedure in an improper forum. Id. at 7-8. On January 30, 2013, the USPS notified Harris that it had completed its investigation into the five claims of discrimination raised by Harris, and that Harris had the right to request a hearing before an administrative law judge or a final decision could be issued without a hearing. Dkt. # 15-8, at 1. Harris was further advised that the USPS would issue its final decision without a hearing if plaintiff failed to take any action. Id. Harris did not request a hearing, and USPS issued a FAD rejecting Harris' allegations of discrimination. Issues one through four were not timely raised by plaintiff, and those matters were

dismissed on procedural grounds. Dkt. # 15-9, at 3-4. In any event, the USPS assumed that all of Harris' claims were timely and found no merit to Harris' claims. Id. at 5-30. Harris was advised that she could file a lawsuit in federal court within 90 days of receipt of the decision if she was unsatisfied with the outcome, or she could file an administrative appeal within 30 days of receipt of the decision. Id. at 30-31. The FAD was issued on April 4, 2013. Id. at 31.

On October 5, 2012, the American Postal Workers Union (APWU) had also initiated grievance proceedings on behalf of Harris following her separation from USPS. Dkt. # 15-10. The USPS argued that the grievance was untimely and that the issue raised by Harris was not grievable under the CBA. An arbitrator agreed with the USPS and found that the CBA did not permit arbitration following the decision not to reappoint a PSE. Id. at 10. The arbitrator also found that the grievance was untimely and he rejected Harris' argument that USPS adopted a "shifting defense" that prevented her bringing a timely grievance. Id. at 11. The arbitrator's decision was issued on April 28, 2014.

Harris filed a second request for pre-complaint counseling with the USPS on June 19, 2014, and she alleged that she was discriminated against based on race, color, national origin, gender, and disability, and a formal charge was filed on August 26, 2014. Dkt. # 15-11; Dkt. # 15-12. The complaint re-alleged many of the claims that had previously been rejected, but Harris also argued that the USPS "fail[ed] to be honest about the termination" and "materially and fraudulently flip-flopp[ed] on the official reason" for her separation. Dkt. # 15-12, at 4. The USPS found that plaintiff's second charge was untimely, and equitable tolling did not apply because Harris was on notice of the alleged "flip-flopping" as early as August 22, 2012. Dkt. # 2, at 28. Harris' claims

4

were also dismissed to the extent that she attempted to re-allege issues that had already been decided.  Id. at 30.

On December 17, 2014, Harris filed this case alleging claims of race, gender, and pregnancy discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII), and she alleged that the USPS retaliated against her for filing a charge of discrimination.  Harris also alleged a claim of "association discrimination" under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., on the theory that the USPS discriminated against her because of her son's disability.[3]  On June 29, 2015, defendant filed a motion for summary judgment (Dkt. # 15) on the ground that plaintiff failed to file this case within 90 days of receipt of the FAD.  Plaintiff filed an unopposed motion to stay discovery (Dkt. # 20) pending a ruling on the motion for summary judgment, on the ground that a ruling on the motion for summary judgment could be dispositive and it would be a waste of the parties' resources to engage in discovery until the motion for summary judgment was resolved.  The Court granted the motion and discovery is stayed.  Dkt. # 21.  Plaintiff has now filed a motion for leave to conduct additional discovery (Dkt. # 23) before the Court rules on defendant's motion for summary judgment but, in the alternative, she has also filed a response to the motion for summary judgment (Dkt. # 22).

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S.

---

[3]  Harris claims that her son was born with a severe heart defect and that she was required to take time off work to care for her son.  Dkt. # 2, at 12.  She claims that the USPS discriminated against her due to her "association" with a disabled person.  Id.

5

242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendant argues that plaintiff failed to file her lawsuit within 90 days of receipt of the FAD, and that plaintiff's claims should be dismissed as untimely. Plaintiff responds that defendant's motion is premature and she requests leave under Fed. R. Civ. P. 56(d) to conduct additional

discovery before the Court rules on the issue of timeliness. Dkt. # 22, at 8. Plaintiff also argues that her time to file this case should be extended under the doctrine of equitable tolling, and she asserts there are genuine disputes as to material facts that preclude entry of summary judgment on this issue.

### A.

Plaintiff requests leave to conduct additional discovery before the Court rules on defendant's motion for summary judgment, because she claims that she needs to conduct discovery on the issue of equitable tolling in order to fully respond to the motion for summary judgment. Dkt. # 23. Defendant responds that specific facts identified in the affidavit of plaintiff's counsel do not concern the issue of equitable tolling, and it is unnecessary to provide plaintiff additional time to conduct discovery on issues that are not material to the Court's ruling on defendant's motion for summary judgment. Dkt. # 24, at 8-9.

Plaintiff seeks relief under Rule 56(d), which provides:

**(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). "The general principle of Rule [56(d)] is that 'summary judgment [should] be refused where the nonmoving party has not had the opportunity to discovery information that is essential to [her] opposition.'" Price ex rel. Price v. Western Resources, Inc., 232 F.3d 779, 783 (10th Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986)). To obtain relief under Rule 56(d), the party seeking relief must show "(1) that necessary and probable facts

7

are not available, (2) why those facts cannot be presented currently, (3) 'what steps have been taken to obtain these facts,' and (4) 'how additional time will enable [plaintiff] to' obtain those facts and rebut the motion for summary judgment." Blixseth v. Credit Suisse AG, ___ F. Supp. 3d ___, 2015 WL 5174239 (D. Colo. Sep. 4, 2015). The party seeking additional time to conduct discovery must submit an affidavit or declaration that "explain[s] why facts precluding summary judgment cannot be presented." Committee for First Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992). Rule 56(d) is not a "license for a fishing expedition" and the party seeking to a defer a ruling on a motion for summary judgment must identify specific discovery that is necessary in order to fully respond to the motion. Lewis v. City of Fort Collins, 903 F.2d 752, 759 (10th Cir. 1990). Relief should not be granted under Rule 56(d) when the "desired discovery would not meet the issue on which the moving party contends there is no genuine factual issue." Jones v. City and County of Denver, Colorado, 854 F.2d 1206, 1211 (10th Cir. 1988).

Plaintiff has submitted the affidavit of her counsel, Jeffrey Jones,[4] outlining the issues for which she requests additional discovery. Dkt. # 22-1. Jones states that he and co-counsel intend to engage in written discovery and take depositions as to:

> David Downs [sic] knowledge of EEO and grievance filing deadlines, workplace complaints against David Downs and Mr. Downs involvement in overseeing or otherwise handling complaints against subordinates under his supervisor, David Downs' recollection of his treatment of Ms. Harris, David Downs' recollection of

---

[4] Jones had not entered an appearance as counsel of record when plaintiff's response was filed, and defendant objects to consideration of Jones' affidavit. Dkt. # 24, at 7. However, Jones has since filed a motion for admission pro hac vice and the motion has been granted, and the Court will consider Jones' affidavit when ruling on plaintiff's Rule 56(d) motion. In the future, plaintiff's counsel is advised to enter an appearance as soon as he begins his representation of a client or his filings may be stricken due to noncompliance with LCvR 83.4. Defendant's motion to preclude Jones from representing plaintiff at a settlement conference (Dkt. # 29) is moot.

>when he learned Ms. Harris was pregnant, David Downs' efforts in instructing other employees to inquire as to Ms. Harris' pregnancy status on his behalf, David Downs' first recollection of realizing Ms. Harris was pregnant, David Downs' first recollection of learning Ms. Harris' child suffered a severe heart disability, David Downs' training, time-off, and hours supervision with respect to Ms. Harris and other non-pregnant coworkers, Angie Offord's adverse reaction when Ms. Harris informed Ms. Offord that she would need time off to take care of her severely disabled newborn both pre and post operation, David Downs perception of the workload requirements at the USPS facility he supervised shortly before, during and after Ms. Harris' non-renewal, the purported justification as to why David Downs shifted-defenses and stated termination was for-cause based on performance and absences to Ralph Charles, whether David Downs had ever had an EEO complaint dropped against him and a grievance pursued and the circumstances surrounding such change in venue, whether David Downs was demoted from Supervisor to another position and the circumstances surrounding his demotion, and what Julie Johnson recollects concerning what she wrote and said to Ms. Harris concerning that her claims were likely to be dismissed and the grievance forum was the appropriate forum to seek redress.

Dkt. # 22-1, at 1-2. Jones claims that discovery on these issues will assist plaintiff in establishing a genuine dispute that Downs' purposefully made conflicting representations about the reason for declining to reappoint plaintiff and that he subjectively intended to manipulate the forum in which plaintiff could bring her claims of discrimination. Id. at 3. He states that plaintiff's counsel came up with a "discovery plan" to conduct the bulk of discovery in July 2015, but he acknowledges that counsel for both parties held a discovery conference on April 1, 2015 and that plaintiff began conducting discovery in May 2015. The affidavit does not identity what specific discovery is necessary in order for plaintiff to fully respond to the motion for summary judgment.

The Court finds that plaintiff's decision to request a stay of discovery is relevant to the Court's ruling on her Rule 56(d) motion. Jones' affidavit fails to mention that plaintiff asked the Court to stay discovery due to the filing of defendant's motion for summary judgment, on the ground that a ruling on the timeliness of plaintiff's claims would be dispositive and plaintiff believed that it would be a waste of the parties' resources to resolve an ongoing discovery dispute if the motion

for summary judgment were granted. Dkt. # 20, at 2. Defendant's motion for summary judgment was already on file when she requested the stay of discovery, and plaintiff's motion could be viewed as a representation that she did not need additional discovery to respond to the motion for summary judgment. Plaintiff is now representing that she cannot fully respond to defendant's motion for summary judgment without additional discovery. The Court will consider plaintiff's request for a stay of discovery as a factor weighing against granting her Rule 56(d) motion, because plaintiff affirmatively represented that additional discovery would be a waste of the parties' resources until the parties received a ruling on defendant's motion for summary judgment.

Construing plaintiff's motion and Jones' affidavit liberally, plaintiff could be arguing that she needs to conduct additional discovery as to Downs' subjective intentions to mislead plaintiff about the appropriate forum in which to bring her claim of discrimination following her separation from USPS. However, plaintiff has failed to show that Downs' subjective intentions are relevant to the issue of equitable tolling, because the evidence is clear that plaintiff filed both an EEO charge and a union grievance. Even if the Court were to assume that Downs subjectively intended to mislead plaintiff, the evidence shows that he was unsuccessful and any "defense-shifting" by defendant did not actually prevent plaintiff from filing a complaint in the appropriate forum. The issue is whether plaintiff timely filed this case after receiving notice that she had a right to sue the USPS, and the topics on which plaintiff seeks discovery would not tend to show that defendant took any action to mislead plaintiff or interfere with her right to sue during the relevant time period. The discovery that plaintiff seeks does not concern a "genuine" dispute of material fact and the Court finds that plaintiff's motion (Dkt. # 23) should be denied.

**B.**

Plaintiff argues that there is a genuine dispute as to a material fact concerning the application of equitable tolling, and she asks that defendant's motion for summary judgment be denied and that the issue of equitable tolling be submitted to a jury. Dkt. # 22, at 12-17. Plaintiff's argument for the application of equitable tolling relies heavily on her belief that she was actually discriminated against when she was not reappointed as a PSE. She appears to be arguing that Downs was "creeped-out" by her pregnancy, and she claims that he discriminated against her during her employment and that he refused to reappoint her as a PSE based on her pregnancy, gender, race, and the need to care for her child. Id. at 21-22. Plaintiff argues that Downs manipulated the forum in which plaintiff could bring her claim of discrimination by providing shifting reasons for her separation. Id. at 23. Defendant replies that plaintiff's arguments miss the mark, and the focus should be solely on whether any action by defendant prevented plaintiff from filing this case within 90 days of receipt of notice of her right to sue. Dkt. # 24, at 4-6.

Title VII provides that a federal employee has 90 days from the receipt of notice of final action to file a civil suit. 42 U.S.C. § 2000e-16(c). "It is well settled that the 90-day period for filing a civil lawsuit after final disposition of a complaint by the EEOC is 'a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'"[5] Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1267 (10th Cir. 1996). However, the Tenth Circuit "has generally

---

[5]   Most appellate decisions on equitable tolling concern the tolling of a separate 90 day period for filing a civil suit after the Equal Employment Opportunity Commission has issued a right to sue letter. The Tenth Circuit has held that the 90 day deadline in § 2000e-16(c) is subject to equitable tolling. Belhomme v. Widnall, 127 F.3d 1214, 1216 n.1 (10th Cir. 1997). The cases concerning equitable tolling are applicable, regardless of which 90 day period is at issue, and the Court has not limited its review of cases only to decisions concerning the 90 day time period applicable to federal employees under § 2000e-16(c).

recognized equitable tolling of Title VII periods of limitation only if circumstances 'rise to the level of active deception which might invoke the powers of equity to toll the limitations period.'" Montoya v. Chao, 296 F.3d 952, 957 (10th Cir. 2002) (quoting Cottrell v. Newspaper Agency Corp., 590 F.2d 836, 838-39 (10th Cir. 1979)). Examples of situations when equitable tolling might apply include when an employee has been "lulled into inaction by her past employer" or "has in some extraordinary way been prevented from asserting his or her rights . . . ." Id. at 957. Equitable tolling has been invoked "sparingly," but equitable tolling has been allowed:

> in situations where the claimant has actively pursued [her] judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving [her] legal rights.

Id. at 958 (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)).

The Court has reviewed plaintiff's response (Dkt. # 22) and plaintiff's focus is entirely on events that preceded or immediately followed her separation from the USPS, and she makes no argument that any action by defendant near the time she received notice of the FAD in April 2013 in any way misled or prevented from timely filing this case. Plaintiff claims that Downs learned that plaintiff was pregnant and he treated her less favorably than other non-pregnant PSEs. Dkt. # 22, at 21. Plaintiff had a child on January 7, 2012 and the child had severe heart complications, and she was required to take time off work to care for her child. Id. On August 3, 2012, Downs informed plaintiff that she would not be reappointed as a PSE, and the separation was phrased as an administrative action that was not grievable under the CBA. Id. at 22. She claims that this wrongfully induced her to file an EEO complaint, rather than a union grievance, and Downs shifted his reason for declining to reappoint plaintiff after her 14 day deadline to file a grievance had

expired. Id. Plaintiff filed a formal charge of discrimination on October 3, 2012 and her union grievance was filed two days later on October 5, 2012. Id. She claims that Downs' conduct caused her to file an untimely grievance and she believes that Downs acted with the subjective intent of misleading plaintiff as to the cause of her separation.

Plaintiff's argument does not tend to show that any conduct by Downs or any other employee of defendant caused her file this case more than 90 days after she received notice of the FAD in April 2013. Assuming that plaintiff received the notice within three days of mailing, plaintiff had until July 8, 2013 to file a lawsuit alleging her claims of discrimination against defendant. Instead, plaintiff filed this case on December 17, 2014, which is more than 20 months after she received notice of the FAD. Nothing in plaintiff's affidavit (Dkt. # 22-2) or her response offers any explanation of what actions of defendant from April 2013 to December 2014 prevented her from filing this case. Even if plaintiff was initially confused by the apparently conflicting explanations for her separation, the summary judgment record is clear that plaintiff filed an EEO charge and a union grievance, and both the EEO charge and the grievance were considered and rejected on the merits. Dkt. # 15-9, at 4 (administrative decision finding certain claims untimely but also finding that plaintiff's claims would be rejected on the merits); Dkt. # 15-10 (arbitrator found that plaintiff's separation was not grievable under the CBA and alternatively that the grievance was untimely). Plaintiff filed this case almost a year and half after her deadline to file a civil suit expired, and she has no explanation for her failure to file this case by July 8, 2013. In response to defendant's motion for summary judgment, plaintiff "fully agrees" that she had 90 days from receipt of the April 4, 2013 FAD to file suit and that she did not timely do so. Dkt. # 15, at 5; Dkt. # 22, at 19. The Court does not find that plaintiff acted with due diligence in filing this case, and there is no evidence that was

tricked or misled into waiting to the file the case after she received the FAD. Plaintiff did not initiate a civil suit within 90 days of receipt of the FAD, and her request for application of equitable tolling should be denied. Defendant's motion for summary judgment should be granted.

**IT IS THEREFORE ORDERED** that the Motion of Defendant [Brennan] for Summary Judgment and to Dismiss and Brief in Support (Dkt. # 15) is **granted**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's motion to complete discovery (Dkt. # 23) is **denied**.

**IT IS FURTHER ORDERED** that Defendant Brennan's Motion for Compliance for Order of the Court Mandating Compliance with LcvR 83.2 and 83.4 (Dkt. # 29) is **moot**.

**DATED** this 18th day of November, 2015.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE